[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, in this action are D.W. Van Dyke Company, Inc. (Van Dyke), Dennis J. Faulkner, James A. Whelan and Joseph T. Hayes, and the defendant is Riverside Plaza, Inc., developer and declarant of a residential condominium project known as Riverside Plaza Residential Condominium, in South Norwalk. The controversy between plaintiffs and defendant was the subject of an earlier memorandum of decision by the undersigned dated March 29, 1993. The case was remanded at that time to Attorney Trial Referee, Bernadette Coomaraswamy, Esq., requesting clarification of two CT Page 10759 aspects of her original report dated August 8, 1991: (1) "whether the recommended award to the plaintiffs encompasses solely defects in the plaintiffs' respective units, or whether damage to the common elements is also included;"[1] and (2) "the specific authority, statutory or otherwise, for the award of attorney's fees to the plaintiff."
In response to this request, the attorney trial referee filed a supplemental report dated May 11, 1993. She indicated that her recommended award of damages was based on the definition of "unit boundaries" contained in General Statutes 47-221 ("CGS 47-221
gives the definition of `unit boundaries' and it was on this basis that the referee confined the damages awarded to the specifically named plaintiffs"). The referee further stated that her recommendation pertained only to the property and possessions of individual unit owners. There was a reference to drainage in the parking lot, which concededly is a common element, but the referee later pointed out that her recommended financial awards did not include the parking lot. The report referred specifically to floors, acoustical problems, skylights, cracked ceilings, as well as water damages to rugs belonging to plaintiff Faulkner. The attorney trial referee concluded that on the basis of her findings of fact, the plaintiffs were entitled to recover from the defendant the amount of money previously recommended.
In accordance with Practice Book 438, the defendant moved that the supplemental report be corrected to state: (1) whether the floors, ceilings, and acoustical problems were in an individual unit owner's property, or in a common element; (2) that the ceilings had been exempted from any warranties; and (3) that the defendant had previously paid the association of unit owners $100,000 in December of 1989, which the association used to perform a number of repairs.
The referee declined to make any changes in her report in response to the defendant's motion to correct, but did reiterate in a second supplemental report dated September 10, 1993, that the recommended award of damages to the plaintiffs was exclusively for damages to their individual units, and that she had recommended the award of attorney's fees not on the basis that General Statutes42-110a et. seq., the Connecticut Unfair Trade Practices Act (CUTPA) had been violated, but rather because, in an "appropriate case," such an award is authorized by General Statutes 47-278.[2]
Pursuant to Practice Book 439, the defendant, Riverside CT Page 10760 Plaza, Inc., then filed exceptions asking this court to correct the report. The defendant contends that the attorney trial referee erred by: (1) failing to make the corrections set forth in its motion to correct; (2) and failing to find material facts which were either admitted or undisputed.
The defendant also filed objections to the acceptance of the report pursuant to Practice Book 440, on the following grounds: (1) that any award of damages must exclude defects involving the common elements; (2) that the plaintiffs seek to be compensated for defects in construction and workmanship for which the defendant previously paid the unit owners' association, which would represent a double recovery; (3) that the referee made a mathematical error in recommending an award to plaintiff Van Dyke, and the correct figure should be $7,045, not $10,045; and (4) that attorney's fees may only be awarded pursuant to General Statutes 47-278 if punitive damages are authorized for a "wilful failure" by the condominium developer to comply with CIOA.
The main issue in these cases is whether the plaintiffs seek to be compensated for defects in the common elements.[3] The award of damages to the individual units were based on plaintiffs' Exhibit 48, which is an estimate of the cost of repairs submitted by Don Metz Son Builders, of Danbury. The referee recommended adding $750 to the estimate of damages for each of the four units in order to compensate the plaintiffs for the $750 that they had each paid to the association as an assessment for damages to the common elements.[4] Moreover, the referee's report states explicitly that her recommendations pertain only to the property of individual unit owners and she refers specifically to pages in the transcript describing defective workmanship in individual units.
In the original memorandum of decision, reference was made to the scope of review by this court of the report of an attorney trial referee. In general, our task is to determine whether the subordinate facts suffice to support the ultimate factual conclusions, Ruhl v. Fairfield, 5 Conn. App. 104, 106, 496 A.2d 994
(1985), and further, whether the conclusions of law are legally sound. Pilato v. Kapur, 22 Conn. App. 282, 283, 576 A.2d 1315
(1990). The procedure is similar, I believe, to that employed by an appellate court in reviewing a decision of the trial court. "On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and CT Page 10761 logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence of whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous . . . ." (Citations and internal quotation marks omitted). Fortier v. Newington Group,30 Conn. App. 505, 509, 620 A.2d 1321 (1993).
In terms of damages, the referee recommended that the plaintiffs be compensated for the cost to repair the items mentioned in Exhibit 48. General Statutes 47-212 (a) indicates that "[t]he remedies provided by this chapter shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed, provided consequential, special or punitive damages may not be awarded except as specifically provided in this chapter or by other rule of law." "[T]he appropriate remedy here would be to place the plaintiffs in the position they would have been in but for the breach." Grey v. Coastal States Holding Co., 22 Conn. App. 497,506, 578 A.2d 1080, cert. denied, 216 Conn. 817, 580 A.2d 57
(1990). By obtaining money from the defendant, the plaintiffs can perform remedial work on their respective units and be put in the same position they would have been in had the defendant "fully performed" its obligation to construct the units in a proper and workmanlike manner. General Statutes 47-212 (a).
Regarding the correct amount of damages to be awarded to each plaintiff, it is noted that an award was made in each case for "seal exterior brick" and "repoint brick." I agree with defendant that these repairs appear to pertain to the common elements as defined in General Statutes 47-221, and should be deleted from the award. In addition, the recommendation that each plaintiff be reimbursed for the $750 paid to the unit owners' association is not accepted, as this money was a charge against all the approximately 40 units in the condominium development, and was used to repair defects in the common elements. Also, there was a mathematical error regarding the award for Van Dyke, when the referee added $750 to damages of $6,295, and recommended a figure of $10,045 instead of $7,045.
As to the recommended award to the plaintiffs for attorney's fees, the referee acknowledges that the defendant's conduct was neither wilful nor in violation of CUTPA. "[I]n order to award punitive or exemplary damages, evidence must reveal a reckless CT Page 10762 indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks and citations omitted) Tessman v. Tiger Lee Construction Co.,228 Conn. 42, 54, ___ A.2d ___ (1993). Punitive damages as authorized by General Statutes 47-278 should not be awarded against defendant because the referee did not find defendant's conduct to be wilful. Although an "appropriate case" under General Statutes 47-278 might refer to conduct less wilful and reckless than that encompassed in CUTPA, particularly in light of the reference in General Statutes 47-212 (a) to the effect that the remedies for violations of CIOA should be "liberally administered", the referee did not explain why this case is "appropriate" for the award of attorney's fees, so this recommendation is not accepted.
Accordingly, after subtracting for the sealing and repointing of brick, deleting the common charge of $750, and correcting the mathematical error referred to previously, judgment enters in favor of the plaintiffs and against the defendant as follows: Van Dyke is awarded $5,415; Faulkner, $8953; Whelan, $12,530; and Hayes, $6,830, without attorney's fees, and with costs as taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut this 9th day of December, 1993.
WILLIAM BURKE LEWIS, JUDGE