[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
On November 4, 1990, the plaintiff, Connecticut National Bank (CNB),[1] initiated a foreclosure action on a note given by the defendant, Brooks Development Corporation (Brooks Development), and personally guaranteed by defendants Torrey Brooks and Lauren Brooks. Brooks Development, which was in the real estate development business during 1989 and 1990, had a project called the Tealbrook Condominium project which failed in 1990. The plaintiff filed an amended complaint dated January 29, 1991, seeking to collect upon a $500,000 note made to Brooks Development and upon the personal guarantees made on the note by Torrey D. Brooks and Lauren F. Brooks. The plaintiff also sought to set aside a transfer of property made by Torrey and Lauren Brooks to the defendant Brooks, Torrey Scott, Inc. and the defendant Westfair, Inc.[2] with the intent of avoiding their obligations on the plaintiff's debt or of hindering its collection.
The matter was tried before an attorney trial referee. on November 15, 1995, the attorney trial referee issued his report. The referee found the following facts. CNB issued a line of CT Page 4781 credit in 1990 in the amount of $500,000 plus interest to Brooks Development. This note, signed March 9, 1990, was due May 31, 1990. The defendants Torrey Brooks and Lauren Brooks personally guaranteed the loan made to the corporation without disclosing the increase of their personal indebtedness to their family corporations at the time they signed the note, or during discussions of May, June, and July 1990, with CNB personnel. On August 2, 1990, CNB made a formal demand for payment on the note. On September 12, 1990, Torrey and Lauren Brooks gave a mortgage to Brooks, Torrey and Scott, Inc. in the amount of $190,000. Also on September 12, 1990, Torrey and Lauren Brooks gave a mortgage in the amount of $140,000 to Westfair, Inc. Both mortgages were recorded September 17, 1990.
On September 25, 1990, a prejudgment attachment was issued against the property of Lauren and Torrey Brooks. The attorney trial referee concluded that the attachment granted to CNB pursuant to General Statutes § 52-285 was effective.[3]
Furthermore the attorney trial referee found that the defendants Torrey and Lauren Brooks gave mortgages to Brooks, Torrey and Scott, Inc. and Westfair, Inc. at a time when both of them knew that CNB was actively seeking repayment of the March 1990 note that they guaranteed. The referee determined that CNB established by clear and convincing proof that the conveyances were fraudulent because they were made with actual intent to avoid any debt or duty owed to the plaintiff and made without any substantial consideration by people who are or will be thereby rendered insolvent. Moreover, Torrey Brooks was an officer;director and owner of 24% of the stock in both corporations. Theattorney trial referee, found that, therefore, the mortgages weretransfers to an insider.[4] The referee concluded that the twomortgages made in September 1990 to Westfair, Inc. and Brooks,Torrey and Scott. Inc. should be set aside as fraudulentconveyances and judgment should be granted to CNB.
If a party wishes to challenge any findings of fact or rulings made by the referee in the report, he or she may file a motion to correct within two weeks of the filing of the report pursuant to Practice Book § 438. If the attorney trial referee fails to correct a report as requested, the moving party may file exceptions seeking correction of the report by the court within ten (10) days after the decision on the motion to correct has been filed. Practice Book § 439. Within two weeks after the filing of a report; or if a motion to correct the report has been made, within two weeks from the filing of the decision on the CT Page 4782 motion; objections to the acceptance of the report should also be filed. Rowan Construction Corp. v. Hassane, 213 Conn. 337, 340
n. 2, 567 A.2d 1210 (1990).
On November 28, 1995, the defendants Westfair, Inc. and Brooks, Torrey Scott filed a motion to correct. The attorney trial referee amended his report on or about January 16, 1996, denying the motion to correct except for making four additional findings. On January 24, 1996, the defendants Westfair, Inc. and Brooks, Torrey Scott filed exceptions to the report of the attorney trial referee. On January 29, 1996, they filed objections to the report. On January 26, 1996, the defendants Torrey and Lauren Brooks filed exceptions to the report. On January 30, 1996, they filed objections to the report. On May 6, 1996 the parties argued the merits of the exceptions and objections to the report before this court. Also on May 6, 1996, Westfair, Inc. and Brooks, Torrey Scott, Inc. filed supplemental briefs to support their positions with respect to the acceptance of the report of the attorney trial referee.
"The reports of [attorney trial] referees are . . . reviewable in accordance with well established procedures prior to the rendition of judgment by the court. Practice Book §§ 428 through 445.[5] Dills v. Enfield, 210 Conn. 705 712-13,557 A.2d 515 (1989). The trial court shall render judgment as the law requires upon the facts as found by the attorney trial referee. Id., 713; Practice Book § 443. The court is bound by theattorney trial referee's findings of facts although not by hisconclusions of law. Pilato v. Kapur, 22 Conn. App. 282, 283,576 A.2d 1315, cert. granted, 216 Conn. 813, 580 A.2d 59 (1990).
If the referee fails to correct a report as requested, the moving party may file exceptions seeking correction of the report by the court. Practice Book § 439; Garofalo v. Argraves,147 Conn. 685 687, 166 A.2d 158 (1960). The defendants Westfair, Inc. and Brooks, Torrey Scott, Inc. claim in its exceptions the same subject matter set out in the motion to correct. They challenge the referee's factual findings that led to his conclusion that the conveyance was fraudulent.
The defendants Torrey and Lauren Brooks did not submit amotion to correct. Parties should not bypass a motion to correct pursuant to Practice Book § 438, and instead file exceptions pursuant to § 439 or objections pursuant to § 440, unless they agree with all the facts and rulings set out by the referee. CT Page 4783 The court will not later review any findings of fact or rulings made by a referee unless those rulings were first raised in a motion to correct. Budney v. Ives, 156 Conn. 83, 91, 239 A.2d 482
(1968) (rulings); Garofalo v. Argraves, supra 147 Conn. 687
(findings). A party who fails to file a motion to correct waivesany right to attack the subordinate factual findings in thereport. LiVolsi v. Pylypchuk, 12 Conn. App. 527, 528 532 A.2d 593
(1987) (per curium). The party may timely file exceptions, but the court will not change subordinate factual findings.
Notwithstanding Torrey and Lauren Brooks' failure to file a motion to correct, the two groups of defendants who filed exceptions referred the court to similar testimony to support their contentions. They contend that the testimony presented atthe hearing demonstrates that the conveyance was merely apreference and not fraudulent in nature. There was testimony, however, that the conveyance was made to corporations in which the individual defendants had an interest and a familial relationship to the other shareholders.
"The determination of the question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances. . . . Such a fact is, then, not ordinarily proven by direct evidence, but rather, by inference from the facts proven — the indicia or badges of fraud. . . . The record support [sic] the findings of subordinate facts from which fraud can be reasonably inferred in that the inferences are those that can be reasonably drawn." (Citations omitted; internal quotation marks omitted.) Cook v. Bieluch, 32 Conn. App. 537,552, 629 A.2d 1175 (1993). "Upon conflicting evidence, it is peculiarly within the province of the trier of fact to judge the credibility of the witnesses and to draw proper inferences."DeLuca v. c. W. Blakeslee Sons, Inc., 174 Conn. 535, 547,391 A.2d 170 (1978). The attorney trial referee weighted thetestimony and explicitly found that the defendants withheldinformation from CNB and that the later conveyances werefraudulent. The court, therefore. will not substitute thedefendants' contentions for the factual findings of the attorneytrial referee.
"A party may file objections to the acceptance of the report on the grounds that conclusions of fact stated therein were not supported by the subordinate facts found, or that the referee erred in his [or her] rulings." Bernard v. Gershman, 18 Conn. App. 652,655, 559 A.2d 1171 (1989); Practice Book § 440. CT Page 4784 "Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the referee." Id., 656. The court need not accept the referee's legal conclusions, and may make its own independent analysis based on the fact as determined by the attorney trial referee. See Dills v. Enfield, supra210 Conn. 713; Rostenberg-Doern v. Weiner, 17 Conn. App. 294,298-301, 552 A.2d 827 (1989).
The defendants Westfair, Inc. and Brooks, Torrey Scott, Inc. challenge many of the factual conclusions reached by the referee. They assert that this court should find that the mortgages to Westfair, Inc. and Brooks, Torrey Scott, Inc. were preferential rather than fraudulent. They also challenge the referee's determination that CNB established by clear and convincing evidence grounds for the verdict.
General Statutes Rev. to 1989 § 52-552 was in effect at the time of the transfers at issue.[6] It stated: "All fraudulent conveyances, suits, judgments, executions or contracts made or contrived with intent to avoid any debt or duty belonging to others shall, notwithstanding any pretended consideration thereof, be void as against those persons only, their heirs, executors, administrators or assignees, to whom such debt or duty belongs." Molitor v. Molitor, 184 Conn. 530, 535 n. 3,440 A.2d 215 (1981). "Under that statute, a party seeking to set aside aconveyance as fraudulent must prove either: (1) that theconveyance was made without substantial consideration andrendered the transferor unable to meet his obligations; or (2)that the conveyance was made with a fraudulent intent in whichthe grantee participated. . . . The party seeking to set asidethe conveyance need not satisfy both alternatives." (Citation omitted; internal quotation marks omitted.) Tyler v. Schanbel,34 Conn. App. 216, 221, 641 A.2d 388, aff'd., 230 Conn. 735,646 A.2d 152 (1994).
"A fraudulent conveyance must be proven by clear and convincing evidence. . . . Whether a conveyance is fraudulent ispurely a question of fact." (Citation omitted- internal quotation marks omitted). Farrell v. Farrell, 36 Conn. App. 305, 309,650 A.2d 608 (1944). The referee found that the plaintiff established by clear and convincing evidence that the conveyances were fraudulent because they were made with actual intent to avoid the duty the individual defendants owed on the note. This court findsthat the familial and insider relationship that existed betweenCT Page 4785the individual defendants and the corporate defendants supportsthis legal conclusion. Moreover, the referee explicitly found that the defendant corporations knew that the individual defendants were in a failing financial situation when the conveyance occurred. The court, therefore, will not interfere with this conclusion of the attorney trial referee.
The objection to the acceptance of the report of the attorney trial referee is overruled. The court enters judgment in favor of the plaintiff in accordance with the report of the attorney trial referee.
Grogins, J.